Ross et al. *v.* Taylor.

[86 South. 809, No. 21498.]

SUBROGATION. *Indorser's petition to be subrogated to rights of payee of note held to state cause of action.*

A complaint, in a suit by an indorser of a note against indorsers on another note made by the maker of the first note to be subrogated to the rights of the payee of the second note, on the ground that the indorsement of the first note had been obtained from plaintiff on the maker's representation that he intended to use it to take up another note on which plaintiff also was indorser, but that instead the maker had sold the note and with the proceeds paid part of the second note and then absconded, *held* to state a cause of action as against demurrer.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Suit by S. C. Taylor against W. L. Ross and another. Decree for plaintiff on demurrer, and defendants appeal. Affirmed and remanded.

*John T. Smith,* for appellant.

Citing Bisp., paragraph 335; 56 N. E. 791; *Chaffe* v. *Oliver,* 39 Ark. 542; *Cockrum* v. *West,* 23 N. E. 140; *Mansfield* v. *New York,* 58 N. E. 889; *Knighton* v. *Curry,* 62 Ala. 404; and *Gatewood* v. *Gatewood,* 75 Va. 411. Black's Law Dictionary thus defines subrogation: "The equity by which a person who is secondarily liable for a debt, and has paid it, is put in the place of the creditor, so

as to entitle him to make use of all the securities and remedies possessed by the creditor in order to enforce the right of subrogation as against the principal debtor, or of contribution against others who are liable in the same rank as himself.

The facts above set out do not bring this case within the definition. We regret our inability to cite cases directly in ·point. The books do not seem to contain a single case at all like the above statement of facts. In so far as we have been able to learn, no effort has heretofore been made to invoke the doctrine of subrogation on a similar statement of facts. The case presenting a statement of facts most nearly like the facts in this case is *Flannary and Others* v. *Utley and Wife*, 5 S. W. 878. Counsel for appellee in the court below laid great stress on the case of *Cotton* v. *Dacey et al.*, 61 Fed. 481.

The court in the case based its decision on two very material matters that are wholly lacking in this case. First, as stated by the court, there was connivance between the mortgagor and the agent of the party seeking the right of subrogation. In the case now before this court there is absolutely no suggestion of connivance between H. L. Ross, W. L. Ross and W. A. Smith, nor was there any between these parties and the Delta Loan & Investment Company; second, there is and can be in this case no suggestion of agency between H. L. Ross and S. C. Taylor, appellee. H. L. Ross was procuring this money for his own use which was entirely independent of any interest of S. C. Taylor. In addition to this, as pointed out above H. L. Ross received no money from S. C. Taylor, but merely procured appellee's indorsement on his note, and, on the combined credit of the two, sold the note. It was not Taylor's note that was sold, but Ross' note, on which Mr. Taylor was only secondarily liable; it was not Taylor's twelve hundred dollars that was paid to the Delta Loan & Investment Company, but the money of H. L. Ross.

A person advancing money to pay a debt not his own is not entitled to be subrogated to the rights of the creditor against his debtor, unless the party so paying was a

surety for the debt, or has been compelled to pay it to protect his own rights, or there was an agreement to that effect with the creditor. *Brown* v. *Merchants' Bank,* 66 Mo. App. 427; *Sanford* v. *McLean,* 32 Paige, 117; and *Downer* v. *Miller,* 15 Wis. 612.

Where the maker of notes secured by a mortgage borrowed money from a third person with the avowed intention of discharging notes given to A, and with sub-rogation of A.'s rights of mortgage, such third person would not be subrogated to A.'s rights, since the maker had not authority to cause such subrogation without A.'s knowledge or consent. *Hoyle* v. *Cozobat,* 25 La. Ann. 438.

We, therefore, submit that the learned chancellor below erred in overruling the demurrer; and that the case ought to be reversed and dismissed.

*Somerville & Somerville,* for appellee.

On the face of the record S. C. Taylor has a perfect remedy at law, because the note in suit has been endorsed over to him, he has paid out the sum of one thousand two hundred and eighty dollars for it and he should be reimbursed.

If therefore the said S. C. Taylor is entitled to recover either in the equity court or a court of law the supreme court will affirm this case. The appeal in this case is on two grounds; first, that there is no equity in the bill; and second, that the complainant has an adequate remedy at law. We submit that the appeal is directly in conflict with the constitution, section 147.

This court has held, in cases too numerous to mention, that this section is absolutely binding upon the supreme court and relieves it from the duty of determining which jurisdiction was proper for the trial of a given cause. That this section applies to interlocutory orders as well as final decrees has been held several times. *Cazenucve* v. *Curell,* 70 Miss., 521, 13 So. 32; *Irion* v. *Cole,* 78 Miss. 132, 28 So. 803; *Dinsmore* v. *Hardison,* 111 Miss. 313, 71 So. 567; *Metzger* v. *Joseph,* 111 Miss. 385, 71 So. 645.

It is also quite well settled that even though it be obvious that the chancery court should not have assumed jurisdiction, still this court will not disturb the cause for this reason, but will refuse to consider this error, if error. *Cazeneuve* v. *Curell,* 70 Miss. 521, 13 So. 32; *Adams* v. *Capital State Bank,* 74 Miss. 307, 20 So. 881; *Hancock* v. *Dodge,* 85 Miss. 228, 37 So. 711; *Miss. Fire Assn.* v. *Stein* (Miss.), 41 So. 66; *White* v. *Willis,* 111 Miss. 417, 71 So. 737; *Grenada Grocery Co.* v. *Tatum,* 74 So. 286; *Dinsmore* v. *Hardison,* 111 Miss. 333, 71 So. 567; *White et al.* v. *Willis,* 111 Miss. 417, 71 So. 737; *Woodville* v. *Jenks,* 94 Miss. 210, 48 So. 620; *Grenada Grocery Co.* v. *Tatul,* 74 So. 286.

The constitution is too plain for misunderstanding or argument and we submit that there is no merit in this appeal.

Second: The case should be affirmed, and the chancellor sustained. We trust that the court will not take the previous part of this brief as any indication of lack of faith in the equity of our cause. If there ever was a case where subrogation is proper we think this is the case.

Opposing counsel insist that Mr. Taylor was only an accommodation endorser. Having signed the note before its original delivery he is liable as a maker; and, having paid it, he is entitled to all of the benefits allowed to a co-maker or otherwise. The case of *Flanary et al. v. Utley et px.* (Ky.), 5 S. W. 878, is relied upon by opposing counsel, and was so relied upon in the argument before the chancellor. This case is a very close case, there was a former decision which is not cited, which will be found in 3 S. W. 412, and the original opinion contains the facts of the case, from which the court can more readily see the lack of equity in the case and why the Kentucky court refused to allow subrogation. It will be noted however that the case has a dissenting opinion, and that at least one of the judges of the Kentucky court thought subrogation should be allowed in that case (see dissenting opinion of Pryor, C. J., at page 414, of Vol. 3, S. W.). The Utley case however is entirely dissimilar from the case at bar.

The case of *Cotton* v. *Dacey,* was cited by us in the court below (61 Fed. 481) and this case is authority for the proposition that where a party receives money or choses in action for one purpose and fraudulently breaches the trust reposed in them and uses the money for another purpose, thus forcing his principal to pay off an obligation, that the principal is entitled to subrogation and to all of the rights that the original creditor had. This is exactly what we are asking in this case. *Cotton* v. *Dacey,* 6. Pom. Eq. Jurisprudence, page 1499.

The books contain cases without limit holding that where one pays off a prior mortgage and takes a later mortgage and an intervening mortgage is thereby given precedence, the court will hold that the party making the payment will be held as having a prior mortgage where the equity of the situation requires it. There need be no connivance, the equity court simply will not permit one to take advantage of a party innocently making a payment, or making a payment under compulsion. This is exactly the situation presented by the bill of complaint here, and the quotation from Pomeroy covers the case. We list a few of the cases without quoting from them at length. Each case stands on its own foundation and we insist that the case here presented to the court has more convincing and impelling equity in it than many of the cases reported. We cite: *Gore* v. *Brian* (N. J.), 35 Atlantic Rep. 897; *State Nat. Bank of Maysville* v. *Vicroy et al.* (Ky.), 70 S. W. 193; *Capital Lumbering Co.* v. *Ryan et al.* (Or.), 54 Pac. Rep. 1093; *Zinkeinsen* v. *Lewis et ux.* (Kan.), 75 Pac. 644; *Warne Willis & Co.* v. *Morgan* (Kan.), 75 Pac. Rep. 480; *Wilson's Gdn.* v. *Wilson et al.* (Ky.), 50 S. W. 260.

We pass to the other authorities cited by opposing counsel. Counsel cites authorities holding that a person is not entitled to subrogation unless he was a surety, or has been compelled to pay the debt, or there was a special agreement. We answer that the bill alleges and it will be shown that the appellee was a surety on the note in dispute and he was compelled to pay the said note, and being

so compelled he was in contemplation of equity, as in fact, paying the money to the Delta Loan and Inv. Co., and all we ask is that he be subrogated to the rights' of this company, if indeed he is not in law now the owner of the note in suit.

Counsel cites a case from the state of Louisiana which we are unable to comment upon because we do not have the report in town. However, it is apparent from the part cited in the brief that the case (*Hoyle* v. *Cozabar,* 25 La. Ann. 438), was one where the rights of the mortgagee had an equity which was superior to the rights of the party lending money to the mortgagor to partially discharge the mortgage, and of course in that sense there could not be any such subrogation as to affect the rights of the innocent third party holding a prior lien.

As to the balance of the brief filed by the appellants we submit that counsel has misconceived the bill and the legal effect of the same. Counsel seems to think there could be no subrogation if the note had been paid in full instead of being paid in part. We see no reason for so thinking. Whatever payment may have been made by S. C. Taylor's money would entitle him to subrogation to that extent. Counsel says that there was no money of S. C. Taylor's involved. We and Mr. Taylor wish very much that his money had not been used, but the fact is, his money was used.

We submit that the case should be affirmed.

Sam C. Cook, P. J., delivered the opinion of the court.

The appellee based his suit upon the following bill of complaint, viz.:

"The original bill of complaint of S. C. Taylor, a citizen and resident of the second judicial district of Bolivar county, state of Mississippi, as exhibited against H. L. Ross, whose residence and post office are to the complainant unknown, and W. L. Ross and W. A. Smith, citizens and residents of the said second judicial district of Bolivar county, Mississippi, would respectfully state and show

unto the court the following grounds for equitable relief:

"The complainant would state and show unto the court that he is a planter, engaged in the business of raising cotton and corn; that he is also the owner of sundry tracts of land in this and other counties; that the defendant H. L. Ross was heretofore a planter in this county, and that he rented sundry tracts of land from the complainant. The complainant would show unto the court that heretofore, during the month of October in the year 1919, the defendant H. L. Ross was indebted unto the Planters' Bank of Shaw, Miss., on a certain promissory note for approximately four thousand dollalrs; that the complainant was an indorser on the aforesaid promissory note and liable for its payment; that the complainant had indorsed the said note because of the fact that the said H. L. Ross was renting from him and he desired to assist him in his business and make the same a success, if possible. The complainant would state and show that he was desirous of seeing the said note at the said Planters' Bank of Shaw paid, but that the said H. L. Ross informed him that he was not able to pay the aforesaid note, and requested the complainant to indorse another note for him to continue the said note and indebtedness until the spring of the year 1920. The complainant states that accordingly, not being able to pay out said sum of money at that time, he on the —— day of October, 1919, indorsed a note for the said H. L. Ross, and delivered it to the said H. L. Ross, with the understanding and agreement that the said new note was to be delivered to the said Planters' Bank of Shaw, Miss., and take up the note then about to become due. The complainant states that he did not agree to become liable for any new debt, and that he only indorsed the said note for the purpose of paying off the old one.

"The complainant stated that the said H. L. Ross did not so use the said note; that the said H. L. Ross used the said note in an entirely different manner; that he, the said H. L. Ross, without the consent and very much against the wishes of this complainant, sold the aforesaid promissory note to innocent third parties, and secured

funds to which he was not entitled, and he, the said H. L. Ross, then and there appropriated to his own use the funds derived from said note, in violation of the statutes of this state, and in violation of his duty and obligation to this complainant; that amongst other things the said H. L. Ross used one thousand two hundred dollars of the said funds to pay the same to the Delta Loan & Investment Company, as hereinafter more specifically set forth. The complainant states that the aforesaid payment to the said company was and amounted to an embezzlement on the part of the said H. L. Ross, and that a court of equity will look into said transactions and permit this complainant to have the benefit of said payment, and to collect said money back as hereinafter more fully set forth.

"Complainant states that thereafter the said H. L. Ross departed from this county for parts unknown, and has not been heard from since; that he disposed of practically all of his property before leaving this county, and was and is utterly and entirely insolvent.

"Complainant states that the said one thousand two hundred dollars was paid out in the following transaction:

"That heretofore, to-wit, on or about the 24th day of February, 1919, at Cleveland, Miss., the defendant H. L. Ross made and executed his certain promissory note in writing, a copy of which is filed herewith as Exhibit A to this bill of complaint, in favor of W. L. Ross, who is his father, and that thereupon said W. L. Ross and one W. A. Smith, a friend of said H. L. Ross, all being planters in this vicinity, indorsed the said note, and the same was thereupon delivered to H. L. Ross to be used by him for the purpose of obtaining funds to be used in his farming operations. That the said H. L. Ross offered the said note for sale, and sold the same on the strength of the said indorsements. That said note was signed by all three of said parties before any money was paid on the same, and that all of the said three defendants are liable on the same as makers. That said note was sold to the Delta Loan & Investment Company of Greenville, Mississippi, for a valu-

able consideration, and the said company became and was the owner thereof.

"That the aforesaid note exhibit in the sum of one thousand two hundred dollars became and was due on November 1, 1919, and that upon the sale of said note for approximately four thousand dollars said H. L. Ross paid the sum of one thousand two hundred dollars to go on the aforesaid note, Exhibit A, thus in violation of the rights of this complainant, because of the fact that he desired to protect his father from loss, knowing that he must abscond. That the said payment of one thousand two hundred dollars was in reality a payment by this complainant, which, however, was not known at that time by the complainant.

"That thereafter the said H. L. Ross absconded, and on March 1, 1920, the said new note appeared in Memphis, Tenn., in the hands of an innocent third party, P. M. Harper, and that on the said date this complainant paid the said note to protect his credit and to avoid the payment of further attorney's fees, costs, and expenses. That the said payment by this complainant on March 1st was under compulsion, and that he was forced to do so by the wrongful misconduct of the said H. L. Ross. That this complainant had been forced to pay out the sum of at least eight thousand five hundred dollars because of the wrongful misconduct and the absconding of the said H. L. Ross.

"That when this complainant was forced to pay the said note on March 1, 1920, he ascertained that said one thousand two hundred dollars had been paid to said Delta Loan & Investment Company by him as aforesaid, and thereupon he purchased the aforesaid promissory note, paying the balance due, and that the same was thereupon assigned and indorsed to the said complainant, as shown thereon. That the complainant is now the owner and holder of the aforesaid promissory note.

"Complainant states that he has paid all that has been paid on the aforesaid note, and that a court of equity will look through the outward appearances and hold that he

is in equity the real and true owner of said note and entitled to recover thereon.

"That this complainant, because of the peculiar circumstances surrounding this transaction, will, in equity, be held to be subrogated to the rights of the Delta Loan & Investment Company, and entitled to collect the full amount due under the aforesaid note, principal, interest, and attorney's fees.

"Complainant states that he is entitled to the aforesaid equitable protection, and that inasmuch as this court will take jurisdiction to carry out said principles it will assume jurisdiction of this matter for all purposes and grant full and final relief herein.

"Therefore, the premises considered, this complainant prays that process of this court do issue for the aforesaid defendants, H. L. Ross, W. L. Ross, and W. A. Smith; that they be summoned to plead, answer, or demur to this bill of complaint on the April rules day, 1920, answer under oath being hereby waived as to each and all of the aforesaid defendants; that the court will hold that this complainant is entitled to recover upon and collect the aforesaid note, Exhibit. A, and thereupon the court will enter a decree, in favor of the complainant and against each and all of the aforesaid defendants, jointly and severally, for the full amount of the principal, interest and attorney's fees due on the aforesaid note.

"Or, if mistaken in the relief prayed for, then this complainant prays for such other further general or special relief as to this court may seem meet and proper, and as in duty bound he will ever pray," etc.

The appellants, defendants below, interposed the following demurrer to the aforesaid bill of complaint, viz.:

"The joint and separate demurrer of W. L. Ross and W. A. Smith to the bill exhibited against them by S. C. Taylor: The said defendants demur to said bill, and pray the judgment of the court if they shall make any further answer thereto; and they show the following causes of demurrer to said bill, to-wit:

"First. That there is no equity in the said bill of complaint.

"Second. If the complainant herein has any rights, they are legal rights, and he has a full, adequate, and complete remedy in a court of law.

"Third. The said W. L. Ross and W. A. Smith, accommodation indorsers, are not liable as makers, as alleged in the said bill of complaint.

"Fourth. For other reasons to be assigned at the hearing of this demurrer."

This demurrer was overruled, and an appeal to this court granted to settle the principles of the case.

We are of the opinion that the bill of complaint makes a case against the demurrants. The decree of the chancellor, overruling the demurrer, will be affirmed, and the cause will be remanded, with leave to the defendant to answer or plead to the bill of complaint within thirty days after the filing of this mandate in the trial court.

*Affirmed and remanded.*