**PEERLESS INSURANCE COMPANY,**
**Appellant,**
v.
**BAILEY MORTGAGE COMPANY,**
**Appellee.**

**NATIONAL INDEMNITY COMPANY,**
**Appellant,**
v.
**Richard M. BANKS and Iona Coleman Banks, Appellees.**
**No. 21660.**

United States Court of Appeals
Fifth Circuit.

May 12, 1965.

Bob Ray, Jackson, Miss., Lucius B. Dabney, Vicksburg, Miss., Elizabeth W. Grayson, Jackson, Miss., J. D. Thames, W. F. Goodman, Jr., Dabney & Dabney, Vicksburg, Miss., for appellants.

M. E. Ward, Landman Teller, Vicksburg, Miss., George S. Neal, Jr., Jackson, Miss., Teller, Biedenharn & Rogers, Vicksburg, Miss., for appellees.

Before WOODBURY,* WISDOM, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This appeal presents an unusual result on claims for fire damage to a residence in Vicksburg, Mississippi. The mortgagee who made a construction loan to the builder recovered the full amount of the damage on a policy issued by one insurance company. The occupants of the residence who had contracted to purchase it, and whose interest, as we shall see, was equitable at the most and of a disputed value, recovered the full amount of the damage on a fire policy issued to them by another insurance company.

The pertinent facts follow. Mrs. Laughlin was a house builder. She contracted to build a house for Mr. and Mrs. Banks on a lot owned by Mr. Lum. The contract price including the lot was $15,000. Mrs. Laughlin was to purchase the lot from Mr. Lum for $3,500 and a deed to the lot was placed in escrow pending the purchase. Mr. and Mrs. Banks conveyed the equity in the home in which they were then residing to Mrs. Laughlin on the purchase price of the new home, and received a credit of $6,700 therefor. This turned out to be a grievous error for the Banks since they failed to take any security for the conveyance, and this property was eventually lost through foreclosure.

In order to construct the new residence, Mrs. Laughlin obtained a construction loan from Bailey Mortgage Company in the amount of $11,400 with Bailey taking a first mortgage as security. Peerless Insurance Company issued a $12,000 builders risk policy to Mrs. Laughlin on the property with a loss payable clause to Bailey as mortgagee.

The house was completed in November 1962 and the Banks occupied the house in anticipation of the purchase. Under the

* Of the First Circuit, sitting by designation.

purchase contract, the Banks owed a balance of $8,300 and they had arranged for a mortgage in this amount from Bailey. However, when the closing day came, it developed that Mrs. Laughlin was unable to convey clear title. In addition to the construction loan due Bailey in the amount of $11,400, the sum of $3,500 was still due for the lot. This meant that Mrs. Laughlin had to ante up $6,600 which she was unable to do because of being insolvent. She was later adjudicated a bankrupt. The Banks continued to live in the house for several months in the expectation of completing the purchase.

At about the time of the abortive closing, Mr. and Mrs. Banks took out an owner's fire insurance policy with National Indemnity Company in the amount of $12,000. Mrs. Laughlin had cancelled the Peerless policy at about the same time, but when the closing was delayed, Bailey required that she reinstate it and the reinstatement was effective on January 9, 1963. The Banks were residing in the home when the fire damage occurred on April 7, 1963. It was stipulated that the amount of damage was $10,600.

Peerless filed an action for declaratory judgment against Bailey Mortgage Company, the Banks, and National Indemnity Company in an effort to absolve itself of liability under its policy, or in the alternative that the loss be prorated between it and National. The Banks filed suit in the state court against National for the damage and that case was removed to the District Court. Thereupon the cases were consolidated for nonjury trial. The District Court held that both Bailey Mortgage Company and the Banks had separate insurable interests in the property; Bailey as mortgagee on the construction loan under the Peerless policy, and Banks as equitable owner under the National policy. Judgment was rendered for Bailey in the amount of the damage, $10,600 against Peerless, and for the Banks in the same amount against National. Both insurance companies appeal.

We have carefully considered the many positions and theories of the insurance companies, and have concluded that the disposition by the District Court was correct except as hereinafter stated. We feel that the only issues which require discussion are (1) whether the Peerless policy was avoided by the failure of Bailey to notify Peerless of the occupancy of the premises by the Banks; (2) whether the Banks had an insurable interest in the property and, if so, in what amount; and (3) whether proration under the identical proration clauses of the respective insurance contracts was indicated. The first issue was resolved against Peerless by the District Court, the second against National, and the third against proration.

Our view is that the conclusion reached by the District Court as to the claim against Peerless was correct. The insurance contract in question expressly covered Bailey as the mortgagee, and under the Mississippi law this coverage constituted an independent contract between the mortgagee and the insurance company. Bacot v. Phoenix Insurance Co., 1909, 96 Miss. 223, 50 So. 729, 25 L.R.A., N.S., 1226; Aetna Insurance Co. v. Cowan, 1916, 111 Miss. 453, 71 So. 746; Hennessey v. Helgason, 1934, 168 Miss. 834, 151 So. 724; and Hartford Fire Insurance Co. v. J. R. Buckwalter Lumber Company, 1918, 116 Miss. 822, 77 So. 798. Thus no act of omission or commission on the part of Mrs. Laughlin could operate to cancel the coverage afforded Bailey. This is not only the teaching of these cases, but language to that effect must be included in such an insurance contract as a part of the mortgage clause. Mississippi Code of 1942, § 5695. That section provides, in relevant part:

" * * * this insurance as to the interest of the mortgagee * * * shall not be invalidated by any act or neglect of the mortgagor * * * nor by the occupation of the premises for purposes more hazardous than are permitted by this policy * *; provided, also that the mortgagee * * * shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said

mortgagee * * *, and, unless permitted by this policy, it shall be noted thereon and the mortgagee * * * shall on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

The record demonstrates that Bailey had knowledge of the occupancy of the premises by the Banks. Peerless contends that under the above language, its policy became void through the failure of Bailey to notify it of the occupancy. The District Court was of the view that Peerless itself had knowledge of the occupancy and therefore waived the notice provision when it voluntarily reinstated the policy on January 9. Without reaching this question, we affirm on the grounds that under § 5695, failure of the mortgagee to notify the insurer of occupancy voids the policy only if the occupancy in fact increases the fire hazard. The District Court found as a fact that occupancy by the Banks did not increase the fire hazard.

The manifest purpose of the notice of occupancy provision in § 5695 is to allow the insurer to protect itself against increased risks by increasing the premiums due. Where there is no increase of risk, there can be no detriment to the insurance company from failure of the mortgagee to notify it of the occupancy. In the absence of such detriment, there is no justification for forfeiture of the policy. We therefore affirm the judgment in favor of Bailey Mortgage Company.

This leaves for decision the appeal of National Indemnity Company from the judgment in favor of Mr. and Mrs. Banks. The District Court found that they had an equitable interest in and legal possession of the property, and held that this was an insurable interest upon which the National Indemnity Company policy could stand. No effort was made to value this equitable interest. Assuming without deciding that it had some value, it is clear that the court committed error in failing to relate the amount of award in favor of the Banks to the value of their insurable interest. The insurance contract itself provided that the Banks were insured to the extent of the actual cash value of the property, but in an amount not to exceed the interest of the insured in the property. The National policy was a contract for indemnity, and they may recover only their actual pecuniary loss, which necessarily can not exceed the value of their interest in the property. 45 C.J.S. Insurance § 919.

Whatever the value of the Banks' interest, it is clear from this record that it is not equivalent to the full value of the residence. Due to the default and insolvency of Mrs. Laughlin, the Banks had little or no chance of ever obtaining the house under their contract for purchase. Their possession was apparently only that of tenants at sufferance. Their judgment against National is reversed and the case is remanded for the District Court to determine the value, if any, of the insurable interest of the Banks and to limit any judgment against National to an amount not to exceed the value of such insurable interest. The District Court may do this on the present record, or in its discretion, on the present record and any other evidence that may be adduced on the question. See Aetna Insurance Company v. Paddock, 5 Cir., 1963, 301 F.2d 807, on this procedural question.

The insurance contracts in question contained the following identical proration clauses:

"In case of any other insurance upon the within described property this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise."

Each company claims the benefit of proration as against the other. We hold, as did the District Court, that

proration is not available to either company on the facts of this case. The generally accepted rule is that there can be no proration of the liability under a contract for fire insurance where the other insurance on the same property is obtained by another party on a separate and distinct insurable interest. See 6 Appleman, Insurance Law and Practice, § 3909, and cases there cited; 45 C.J.S. Insurance § 922. Bailey's interest in the property was that of mortgagee and arose from its construction loan to Mrs. Laughlin. The Banks's interest, if any, arose from their claim under the contract for purchase of the house. These are distinct insurable interests, and the claims of the insureds are adverse in that the proceeds recoverable by one will in no event inure to the benefit of the other. Proration under such circumstances would produce the inequitable result of denying the insureds their full indemnity because of a separate insurance contract entered by independent parties to cover a separate insurable interest.

Affirmed in part; reversed in part; and remanded for further proceedings not inconsistent herewith.